# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOHN DAUSKA,

        Plaintiff,

    v.                                      Case No. 12-C-925

GREEN BAY PACKAGING INC. and
GREEN BAY PACKAGING INC.
SEVERANCE PLAN,

        Defendants.

---

### DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION
### TO COMPEL AND DENYING DEFENDANT'S MOTION FOR SANCTIONS

---

      This case is before the court for resolution of a discovery dispute. The underlying action

arises out of an employment relationship. Plaintiff John Dauska, a former employee of Defendant

Green Bay Packaging Inc. (GBP), filed the action alleging that GBP discriminated against him and

eventually forced him to retire in violation of the Age Discrimination in Employment Act, 29 U.S.C.

§ 621 *et seq*. Dauska also claims that GBP and Defendant Green Bay Packaging Inc. Severance Plan

(the Plan), an entity that GBP contends does not exist, failed to pay him severance benefits in

violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. The

complaint also asserts state law claims for failing to pay wages in violation of section 109.03 of the

Wisconsin Statutes and breach of an express or implied contract. The dispute is framed by two

separate motions: GBP's motion for sanctions under Rule 37(d) for Dauska's failure to appear at his

scheduled deposition and plaintiff's motion to compel GBP to fully respond to his interrogatories and

request for documents. For the following reasons, Defendants' motion for sanctions will be denied and Dauska's motion to compel will be granted in part.

**BACKGROUND**

Some background is needed to place the dispute in context. Dauska worked for GBP, beginning in 1979, as a Corporate Personnel Director. According to the complaint, he was forced to retire against his wishes, despite an outstanding record of over 32 years with GBP. Even before he was forced to retire, Dauska alleges that GBP began reassigning his job responsibilities and treating younger employees more favorably so as to encourage him to resign. When these tactics failed, Dauska alleges the company decided to eliminate his position when he turned sixty-six on February 14, 2011. Dauska also alleges that he was denied severance pay under GBP's Severance Plan without cause in violation of ERISA.

GBP, on the other hand, denies that it forced Dauska to retire or discriminated against him on account of his age. More importantly for purposes of the present dispute, GBP denies that it has a severance plan. Although it admits that it has paid severance benefits to departing employees on occasion in the past, GBP denies that it has a written severance plan or that it has taken any steps to establish a severance plan. GBP further denies that Dauska is similarly situated to the former employees to whom it has paid severance benefits. It is thus apparent that a major dispute exists between the parties, and therefore a major focus of the plaintiff's discovery is whether GBP has a severance plan within the meaning of ERISA.

ERISA imposes fiduciary duties on employers that establish or maintain an employee benefit plan. A severance plan is considered an employee benefit plan. Although employee benefit plans

2

must be in writing, 29 U.S.C. § 1102(1), the courts have held that there need not be a writing in order for a plan to exist. In *Donovan v. Dillingham* the Eleventh Circuit set out the prevailing test for determining whether a "plan" has been established within the meaning of ERISA:

> In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.

688 F.2d 1367, 1372 (11th Cir. 1982); *see also Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811 (7th Cir. 1994) ("A plan need not be in writing to be covered by ERISA so long as the plan is a reality, meaning something more than a mere decision to extend benefits."). Every other circuit has also adopted the *Donovan* approach for determining whether an ERISA plan has been created. *See Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1378 n.14 (7th Cir. 1997).

More recently, however, several courts, including the Seventh Circuit, have questioned whether the *Donovan* approach is compatible with two subsequent decisions of the Supreme Court: *Massachusetts v. Morash*, 490 U.S. 107 (1989), and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). In *Sandstrom v. Cultor Food Science, Inc.,* the Court noted that "[b]oth *Morash* and *Ft. Halifax* evince reluctance to find that regular and predictable awards of severance or vacation payments establish a 'plan,' given the frequency with which these benefits are the subject of bilateral negotiations between employers and departing employees." 214 F.3d 795, 797 (2000); *accord Golden Gate Restaurant Ass'n v. City & County of San Francisco*, 546 F.3d 639 652 (9th Cir. 2008); *see also Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 849 (6th Cir. 2006) ("[T]his Court has not always employed [the *Donovan*] test when determining whether an ERISA plan exists in severance package cases."). Nevertheless, *Sandstrom* did not overrule *Diak* or any other Seventh Circuit decision

3

applying *Donovan*, and it is based on this precedent that Dauska has brought his ERISA claim for severance benefits.

Dauska contends that GBP established, through its policies and practices, a severance benefit plan. Because of his previous positions with GBP as Corporate Personnel Director and Corporate Director of Industrial Relations, Dauska contends he has extensive first-hand experience with GBP's "long-standing practice of offering severance benefits to employees it involuntarily terminated." (ECF 13-1, at 4.) In fact, Dauska compiled a list of some fifty-seven former GBP employees whom he claims were paid severance benefits and has provided additional names of employees who received such benefits in response to one of GBP's interrogatories. (ECF 13-1, at 2-4.) The written interrogatories and requests to produce Dauska propounded to GBP seek in large part information and documents that he claims will demonstrate GBP's severance plan and the circumstances surrounding his retirement.

## THE DISPUTE

The current dispute is over the sequence and scope of discovery between the attorneys for the parties: Attorney Jill Weinstein, who represents Dauska, and Attorney David Weber, who represents GBP. On December 27, 2012, Attorney Weinstein, on behalf of Dauska, served a set of written interrogatories and requests for production of documents on GBP. (ECF 13, at 6.) On January 2, 2013, Attorney Weber wrote Attorney Weinstein requesting that she provide a set of dates on which Dauska would be available for deposition. (ECF 11-1.) Attorney Weinstein stated she wanted to hold off having Dauska's deposition taken until GBP responded to his written discovery requests. Attorney Weinstein stated it would be inefficient and unfair for GBP to depose Dauska before GBP

4

responded to his interrogatories and produced the requested documents. She explained, "John should not have to go into a deposition with absolutely no information from the defendant and potentially be surprised by documents he has never seen." (ECF 13-6, at 1.)

Attorney Weber, on the other hand, wanted to take Dauska's deposition first in part because he thought that the discovery sought by Dauska was too broad and wanted to further evaluate his requests after determining the basis of his claims. (ECF 14-1, at 7.) When Attorney Weinstein insisted that GBP respond to Dauska's outstanding discovery requests before he submit to a deposition, Attorney Weber sent a notice to take the deposition at his office on January 23, 2013. (ECF 11-2.)

Attorney Weinstein objected to the date selected by Attorney Weber because GBP would not have responded to the outstanding discovery requests by then, and also because she was unavailable during the entire month of January. Attorney Weber reluctantly agreed to reschedule the deposition to February 20, 2013, but only on condition that Attorney Weinstein agree it was a firm date. (ECF 13-6, at 3-7.) Attorney Weinstein assured GBP that she was available on February 20, but warned Attorney Weber that if GBP did not respond to Dauska's discovery requests she would raise the issue in a motion to compel. (ECF 13-6, at 2.)

After a brief extension of time to answer, GBP served its responses to Dauska's interrogatories and document requests on February 4, 2013. (ECF 13-2, 13-3.) Upon reviewing GBP's responses, Attorney Weinstein wrote Attorney Weber a seven-page letter on February 5, 2013, outlining her "concerns" with the multiple general objections asserted by GBP and its failure to provide the information requested, in particular, information concerning severance benefits paid to other former GBP employees. (ECF 13-7.) Attorney Weinstein explained in detail why the

5

severance agreements GBP had signed with other employees were relevant, indeed crucial, to Dauska's claim, even citing *Donovan* and *Diak* as support for her position. (ECF 13-7, at 2-3.) After summarizing the shortcomings of GBP's response to her written discovery requests, Attorney Weinstein noted that it appeared that Attorney Weber was purposely trying to withhold discovery while forging ahead with Dauska's deposition in an effort to gain a strategic advantage in the case. (ECF 13-7, at 7.) Attorney Weinstein closed with the statement that if GBP did not fully respond to Dauska's discovery requests by February 8, 2013, she would not produce him for deposition on February 20. (ECF 13-7, at 7.)

On February 8, 2013, Attorney Weber responded to Attorney Weinstein's letter defending GBP's responses to her discovery requests. As to GBP's failure to provide information and documents regarding severance packages offered to other terminated employees, Attorney Weber stated that none of the other employees who were offered severance benefits were in circumstances similar to Dauska's. Attorney Weber wrote, "We do not understand how it would help your case for us to produce all of the company's other severance agreements offered to other employees who lost their jobs in substantially different circumstances." (ECF 13-8, at 2.) Attorney Weber also explained why he thought GBP's responses to other requests were sufficient. He stated that many of Dauska's remaining interrogatories and requests were overly broad, but offered to respond further to some. As to the suggestion that Dauska would not appear for his scheduled deposition, Attorney Weber stated that Dauska had an obligation to appear regardless of whether his attorney was satisfied with GBP's responses to his discovery requests and GBP would strongly object if he did not do so. (ECF 13-8, at 3.)

6

Attorney Weinstein responded on February 11, 2013, again explaining why the severance agreements with other employees were relevant to Dauska's claim and why her requests for information and documents were reasonable. Noting that GBP's refusal to produce information and documents concerning severance agreements with other employees reflected either a fundamental misunderstanding of the law or a deliberate refusal to acknowledge the law holding that an ERISA plan can be established through an employer's practices, counsel stated she would be filing a motion to compel responses to the discovery requests. (ECF 13-9, at 2.) Attorney Weinstein noted a number of other interrogatories and requests to which GBP had refused to respond fully or at all and indicated she would raise these issues with the court as well. Attorney Weinstein closed by stating that, for the reasons discussed in her earlier letter, Dauska would not be appearing for the deposition on February 20, 2013, but that she would work with GBP to reschedule the deposition before discovery closes once the court rules on Dauska's motion to compel. (Dkt 13-9, at 4.)

Three days later, on February 14, 2013, Attorney Weber wrote in response, noting that for the second time in a week Attorney Weinstein had given him only a few days to respond or face a motion to compel. Attorney Weber stated he had been out of the office on other matters but expected to have supplemental responses to her by the end of the week. No mention was made of Attorney Weinstein's statement that Dauska would not be appearing for a deposition on February 20. (ECF 14-8.) On February 19, 2013, the day before the previously scheduled deposition, Attorney Weinstein received GBP's amended discovery responses. Though signed on February 15, 2013, the amended responses were not emailed to Attorney Weinstein but physically delivered to her office. The amended responses modified or withdrew some of the sixteen "General Objections" set forth in the

7

original responses, but did not change GBP's response to Dauska's request for information concerning severance benefits offered to other employees.

Given the late arrival of the amended responses and the fact that Attorney Weber had not commented on her statement in her February 11 letter advising him that Dauska would not be appearing for his deposition on February 20, Attorney Weinstein assumed Attorney Weber understood the deposition was cancelled. Whether he understood it or not, on February 25, 2013, GBP filed a motion requesting that Dauska be sanctioned for his failure to appear for his deposition on February 20, 2013. More specifically, GBP asked the court to bar Dauska's testimony in the matter and award GBP its attorneys fees and costs. Dauska filed a motion to compel the same day.

## ANALYSIS

### A. Motion for Sanctions

GBP contends that Dauska should be sanctioned for his failure to appear at a properly noticed deposition. Its motion is based upon Rule 37(d)(1) of the Federal Rules of Civil Procedure, which authorizes the court to sanction any party who fails to appear for a deposition after having been served with a proper notice. Possible sanctions include dismissal of the action in whole or in part. Fed. R. Civ. P. 37(d)(3), (b)(2)(A)(v). Unless the court finds that the failure to appear was substantially justified or other circumstances make an award of expenses unjust, the court must at least require the party who failed to appear to pay the reasonable expenses, including attorney's fees, caused by the failure to appear. Fed. R. Civ. P. 37(d)(3). Here, GBP seeks to bar Dauska's testimony in the matter, which would effectively amount to dismissal of his claims, as well as its costs and attorneys' fees.

8

GBP contends that a sanction of such severity is warranted because Dauska's conduct was willful. In response, Dauska argues that sanctions are not appropriate and would be unjust.

The court agrees that sanctions are not appropriate. This is not a case where a party simply refused without reason or notice to appear for his deposition. It is clear from the emails and correspondence described above that the attorneys had fundamental disagreements about what the sequence and scope of discovery should be. Absent an order by the court, methods of discovery can be used in any sequence and discovery by one party does not require the other to delay its discovery. Fed. R. Civ. P. 26(d)(2). Here, Attorney Weinstein believed it would be more efficient to proceed first with written discovery and then conduct depositions, so that the witnesses would be better able to answer questions about documents that might be presented. She also believed it would be unfair to her client to confront him at a deposition with documents he had never seen before. Attorney Weber, on the other hand, wanted to conduct Dauska's deposition first in the belief that he could narrow the scope of his discovery requests. Attorney Weber also seems to have believed that it was Dauska's knowledge and understanding that formed the basis of his ERISA claim and did not think Dauska should need GBP's documents in order to explain what his understanding was. (ECF 14-2, at 1.)

In any event, Attorney Weinstein assumed the parties had worked out their dispute without the need for court assistance when Dauska's deposition was rescheduled to a date after GBP's responses to her outstanding discovery requests were due. This changed when she received GBP's discovery responses and found that much of the information requested, including the crucial information regarding severance agreements with other employees, had not been disclosed. Attorney Weinstein immediately conveyed her concerns to Attorney Weber, and based on his response,

realized she would need to seek court assistance to resolve the dispute. She wrote to Attorney Weber on February 11, 2013, advising him of her intent to file a motion to compel and that Dauska would not be appearing for the deposition on February 20th. Although Attorney Weber had previously stated GBP would object to cancelling the deposition, he did not mention it in his February 13 letter to Attorney Weinstein or at any time thereafter until GBP filed its motion for sanctions. Had he objected, Attorney Weinstein no doubt would have filed a motion for a protective order. Because Attorney Weber did not say anything about it, she reasonably assumed that he understood their disputes would be resolved by the court before they could go forward with Dauska's deposition. Under these circumstances, the court finds that Dauska's failure to appear for his deposition on February 20th was substantially justified and it would be unjust to impose a sanction. GBP's motion is therefore denied.

## B. Motion to Compel

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The scope of relevancy under Rule 26 is broad. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978) (holding that relevant information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case").

10

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1)-(4). The party objecting to a discovery request bears the burden of showing why the request is improper. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *see also Sherman Park Cmty. Ass'n v. Wauwatosa Realty Co.*, 486 F. Supp. 838, 845 (E.D. Wis. 1980). In ruling on a discovery motion, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation omitted).

Before seeking court assistance, a party must first attempt to resolve the matter with the opposing party. A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Thus, the party seeking discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct its request to the opposing party. If the opposing party fails to provide the materials, the party must personally consult with the opposing party and attempt to resolve their differences. Civ. L. R. 37.1. If the party is still unable to obtain discovery, she may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a).

As an initial matter, GBP contends that Dauska's motion to compel should be denied because he failed to comply with Civil L.R. 37.1. Dauska included a certification that Attorney Weinstein conferred in good faith with Attorney Weber to resolve their discovery disagreements. (ECF No. 12 at ¶ 3.) As recounted above, the attorneys conferred by telephone, letter and email on numerous

11

occasions between early January and the cancellation of the February 20 deposition of Dauska. (*See* Pl. Br. in Supp. Exs. F-I, ECF Nos. 13-6 to 13-9.) If anything is clear in the case, it is that Attorney Weinstein has conferred in good faith with Attorney Weber in an effort to resolve the matter and has been unable to do so. Her motion to compel is properly before me.

### 1. Discovery related to Plaintiff's ERISA claim

As noted, Dauska served GBP with a set of interrogatories and requests to produce on December 27, 2012. A principal focus of Dauska's discovery was information and documents about severance benefits GBP had paid to other employees who were involuntarily terminated. Based on the test set out in *Donovan* for determining whether an employer has established an employee pension or benefit plan in the absence of a written document, Dauska reasonably believed such information to be relevant to his effort to prove that GBP had a severance plan within the meaning of ERISA. *Donovan*, and the cases applying it, suggest that an employer's past practice of paying severance benefits is at least one of the factors, if not the most important factor, to be considered in determining whether a severance plan, though not in writing, is a reality. *See, e.g., Dubler v. Hangsterfer's Laboratories*, 2012 WL 714130, * 6 (D. N.J. March 5, 2012). Thus, Dauska's Interrogatory No. 1 asked GBP to identify all employees involuntarily separated from employment for the years 2006 to the present and for each person, to state whether the person was offered severance, and if so, how much. Interrogatory No. 3 asked GBP to identify employees whose employment was involuntarily terminated who were not offered severance agreements and to state why severance was not offered. Document Request Nos. 17, 18, 19, and 20 sought copies of the severance agreements and related documents that were offered to employees identified in answer to previous interrogatories or otherwise identified by Dauska.

GBP's initial responses to these Interrogatories and the Requests to produce incorporated its 16 "General Objections" and then proceeded to repeat many of the same objections. Subject to the objections (whatever that may mean), GBP responded:

> GBP states that it simply has no written ERISA severance plan or agreement. While it traditionally offered severance to many employees who were terminated or whose jobs were eliminated, who did not get to delay the end of their employment for a substantial period of time, who did not qualify for full pension benefits, and who signed settlement agreements releasing the company for existing or potential claims, it did not have a policy or practice of offering severance in the absence of these circumstances.

(ECF 13-2, at 5, 6.) Although GBP later withdrew several of objections, it persisted in its refusal to provide the requested information and documents about severance benefits paid or offered to other employees.

GBP's response that evidence of GBP's practice of paying severance benefits is not discoverable makes no sense in light of the law that Dauska had cited and which GBP has yet to challenge. To say that GBP does not have a written severance plan is beside the point. Dauska is seeking information about GBP's severance payments to other employees precisely because GBP does not have a written severance plan. If GBP had a written plan, there would be no need to consider its practice of offering and paying severance benefits to other employees. Dauska has made clear to GBP that he intends to prove that, notwithstanding the fact that GBP may not have a written severance plan, it has nevertheless established a plan by its practice of paying severance to employees it has involuntarily terminated. Under the cases Dauska has cited, Interrogatory Nos. 1 and 3, and Document Request Nos. 17, 18, 19, and 20, all of which seek to obtain such information, are reasonable.

13

GBP argues that Dauska's demands are unreasonable because they are not restricted to employees who are similarly situated. But that's not true. Dauska seeks information concerning severance benefits paid to employees whose employment was involuntarily terminated, like he contends his was. It is an employee's involuntary termination that generally triggers a right to severance benefits when a plan exists, and thus Dauska's request for information about severance benefits paid to employees who were involuntarily terminated is reasonable. GBP's suggestion that the facts surrounding his termination or retirement distinguish his situation from those in which severance benefits were paid may be relevant to whether Dauska is entitled to benefits, but that issue arises only after Dauska has proven that a plan was in reality established.

GBP notes that in *Johnson v. Bemis Co.*, No. 11-C-563, 2011 WL 10632494 (E.D. Wis. Oct. 13, 2011), this court determined that evidence of other severance agreements was not relevant to an ERISA claim for severance benefits. But in *Johnson*, there was a written plan and the issue was whether evidence that the employer had a prior practice of paying more than the plan required was admissible to vary the meaning of an otherwise unambiguous plan. The court held that it could not, which is precisely what the Seventh Circuit held in *Sandstrom*. *See Sandstrom*, 214 F.3d at 797 ("Written plans may be altered only in writing. Statements by plan administrators, side agreements and understandings, or even special offers made to many of a firm's employees, do not change the contents of the plan applicable to other employees."). Here, Dauska is attempting to offer evidence of GBP's practice to establish that GBP had an unwritten severance plan.

GBP complains that Dauska's requests for evidence concerning payment of severance benefits are overly broad because they are not limited to the company's Green Bay office and cover a period back to 2006. GBP notes that it has over 3,000 employees and suggests that requiring it to comply

14

with Dauska's discovery requests would be burdensome and costly. The period over which Dauska seeks the information is not unreasonable in view of the requirement that he prove GBP established a plan by its practice. Assuming an employer's practice can establish a plan, the longer the period that GBP has been paying severance benefits, the stronger the evidence that it established a plan and the better chance he has of demonstrating its terms. Going back five years before his own termination/retirement is not an unreasonable time period. And the fact that GBP has over 3,000 employees is irrelevant because Dauska only seeks information about those employees GBP has involuntarily terminated and paid severance benefits. GBP provides no information to support its suggestion that it would be difficult or unduly burdensome to provide the requested information as to those former employees. Dauska himself has identified over fifty of the group for GBP, and GBP offers no estimate of how many more there might be or what effort is needed to determine the number and comply with the requests. Absent specific evidence of the cost and burden of compliance, there is no basis upon which the court could relieve GBP of its obligation to respond to what appear to be reasonable requests for discoverable information under the law cited.

It appears from the Seventh Circuit's decision in *Sandstrom* that an argument can be made that *Donovan* is no longer good law in this Circuit, at least as to severance plans, and that GBP's previous practice of offering severance benefits is irrelevant to the issue of whether it had established a severance plan within the meaning of ERISA. But GBP has not made that argument; it hasn't even cited *Sandstrom*. Instead, GBP argues both that it does not understand Dauska's position and that whether a plan exists is somehow dependent upon Dauska's own understanding. In light of Attorney Weinstein's letters, emails and Dauska's answers to GBP's own interrogatories, it is difficult to see how GBP could be uncertain of Dauska's position. Dauska has made clear, through his attorney, that

15

in his view, GBP's consistent practice of paying employees severance benefits is sufficient to establish a severance plan even in the absence of a writing.  And whether or not an employee personally knows of an employee benefit plan is irrelevant to its existence.  (ECF 17, at 9 (citing *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir. 1989) ("It would be unreasonable and antithetical to ERISA's purposes to hold that an employer can create an employee benefit plan and then deny benefits on the ground that it never communicated the plan to affected employees.").  If GBP thinks Dauska's view of the law is mistaken and that under a correct view of the law, GBP's past history of paying severance benefits is irrelevant, it should have moved for dismissal or summary judgment on that basis, or at least argued for a different standard in response to Dauska's motion to compel.  GBP has done neither.  Instead, it has allowed what may be a substantive disagreement over the law to degenerate into a costly and time-consuming discovery dispute.  GBP has simply refused to provide the discovery that, if Dauska's view is correct, is clearly relevant.  Absent a challenge to the legal principles on which Dauska's claim rests, he is entitled to the evidence he seeks.  Accordingly, Dauska's motion to compel will be granted as to Interrogatory Nos. 1 and 3, and Document Request Nos. 17 through 20.

Dauska also seeks to compel GBP to respond to Request No. 16.  He states that Request No. 16 asks for personnel files of individuals identified in Interrogatories No. 1 and 3, that is, former employees who were paid or offered severance benefits.  Given GBP's contention that severance benefits are not generally offered but are dependent on employee-specific considerations, the personnel files of other former employees who, unlike Dauska, received or were offered severance agreements may lead to the discovery of relevant evidence.  To the extent those are the only personnel files Dauska is seeking, his motion to compel will be granted.  In fact, however, Request No. 16

16

specifically requests personnel files of individuals who it appears are still working for GBP, including Scott Wochos and Will Kress, who are identified in the complaint, respectively, as GBP's Senior Vice President and General Counsel, and President. Dauska has made no showing that the personnel records of individuals who have not received or been offered severance benefits are discoverable. To the extent Request No. 16 includes individuals who were not paid severance benefits or offered severance agreements, the motion to compel is denied.

One further issue concerning Dauska's request for this information remains. GBP notes that the information Dauska is requesting includes confidential and otherwise private information concerning former employees. GBP therefore requests that should discovery be ordered, a protective order be in place requiring that the severance agreements sought be maintained at the offices of his attorney and made available there for Dauska's counsel's inspection (i.e. attorney's eyes only). Dauska points out that Defendants' request for an "attorney's eyes only" provision would be overly restrictive because his counsel is currently relying on his familiarity with the severance agreements to identify what documents may be missing. In addition, due to Dauska's position as a personnel director, he is already familiar with the severance paid to many of Defendants' former employees.

Here, it does not appear that an "attorney's eyes only" provision is warranted for the severance agreements. A protective order requiring that the severance agreements be designated as confidential can adequately serve to protect the sensitive information related to the agreements signed by terminated employees who received severance pay from Defendants. To the extent that Defendants seek a protective order requiring that the severance agreements be designated as "attorney's eyes only" and maintained in Defendants' counsel's office, the request is denied. In order to facilitate further discovery in light of the confidential material contained in the severance agreements, a protective

order shall issue contemporaneous with this opinion. The parties are directed to confer with one another in order to address what confidential information needs to be maintained under seal should the evidence be submitted into the record.

### 2. Other discovery disputes

Dauska also seeks to compel GBP to respond, or respond more fully, to several other document requests. Dauska moved to compel discovery of his First Set of Document Requests Nos. 5-10, 14-15, 21, and 24. Defendants argue that Dauska's requests are vague and overly broad because they seek documents that relate in any way to his allegations. Request No. 5, for example, seeks "[a]ll documents and emails that refer or relate to Plaintiff and/or his allegations authored by, or intended for, or in the possession of any of the individuals identified in Defendants' Initial Disclosures or Plaintiff's Initial Disclosures." (Dkt 13-3, at 6.) Request No. 6 likewise seeks "[a]ll correspondence, including emails or other modes of communications, among employees of Defendants related to Plaintiff's allegations or Defendants' defenses." (ECF 13-3, at 7.)

Requests to produce "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). The rule allows for requests to describe items by categories. "A common method is to request all documents that 'relate or refer' to specified pertinent matters. The goal is that the designation be sufficient to apprise a person of ordinary intelligence what documents are required and that the court be able to ascertain whether the requested documents have been produced." 8B Wright, Miller & Marcus, *FEDERAL PRACTICE AND PROCEDURE* § 2211 at 173 (3d ed. 2010). But as the district court in Kansas has repeatedly observed, there are limits to the use of open-ended terms such as "related to," "pertaining to," or "concerning." "[A] discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such

18

as 'relating to,' 'pertaining to,' or 'concerning' to modify a general category or broad range of documents or information." *In re Urethane Antitrust Litigation,* No. 04-MD-1616-JWL-DJW, 2008 WL 110896, *1 (D. Kan. Jan. 8, 2008) (citing *Johnson v. Kraft Foods North Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan.2006)).  The reason for this rule is that such broad language makes it extremely burdensome to determine which of numerous documents may conceivably fall within its scope:

> Requests should be reasonably specific, allowing the respondent to readily identify what is wanted.  Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.

*Audiotext Communications v. U.S. Telecom, Inc.*, No. CIV A. 94-2395-GTV, 1995 WL 18759, * 1 (D. Kan. Jan. 17, 1995).  On the other hand, "a request that uses an omnibus phrase to modify a sufficiently specific type of information or group of documents will not be deemed objectionable on its face." *Id.*

Request Nos. 5 and 6 are overly broad under these standards.  They seek all documents and emails that refer to or relate to Plaintiff and/or his allegations or GBP's defenses.  Presumably, the word "allegations" refers to the allegations of the complaint, since no other allegations are mentioned. The allegations of the complaint are themselves quite broad, beginning with the assertion that "GBP is a privately-held corporation with its corporate headquarters located in Green Bay, Wisconsin."  It continues, "GBP manufactures paperboard packaging and employs approximately 3,000 people and consists of 30 divisions operating in 15 states." (ECF 1, ¶ 5.)  And of course, all documents or emails relating or referring to Dauska, given his position as Corporate Personnel Director, would include a vast array of material having no possible relevance to his lawsuit.  Requiring GBP to first attempt to

19

gather all emails and documents falling within these broad categories and then review them for privilege or privacy concerns would be unreasonably time-consuming, burdensome and unfair.

The same is true of Request Nos. 9 and 10. Request No. 9 seeks "[a]ny files, notes, or other documents maintained by any current or former employee of Defendants identified in Plaintiff's or Defendants' Initial Disclosures related to Plaintiff. Again, given his former position at GBP, there are presumably numerous files, notes, or other documents under the control of the individuals listed in the parties' initial disclosures that in some way "relate to" Dauska, but have nothing to do with his claims. Similarly, Request No. 10 seeks "[a]ll correspondence, including emails, or written statements or notes related to any contact or conversation Defendants or their agents have had with persons with knowledge of the allegations in Plaintiff's Complaint." (*Id.* at 8.) To respond to these requests, GBP would be required to gather and review a presumably vast array of paper or electronic "documents" "relating to" Dauska or produced by someone "with knowledge" of Dauska's allegations, whether or not the documents have any relevant information to his claims. Surely, as the former Corporate Personnel Director of GBP, Dauska knows enough about record keeping at his former employer so as to formulate a more specific request. Accordingly, Dauska's motion to compel discovery concerning Request Nos. 5, 6, 9, and 10 is denied and GBP need not respond. However, the denial is without prejudice. Dauska may make a new request with a more specific designation. *See* Wright, Miller & Marcus, *supra*, § 2211 at 176 ("If inspection is denied because the designation is not sufficient, the party may make a new request with a more specific designation.").

As for Dauska's remaining requests for production of documents, GBP must supplement its responses because these requests satisfy the particularity requirement of Rule 34. For instance, Request No. 14 seeks "[a]ll documents that refer or relate to GBP's alleged decision to eliminate

20

Plaintiff's position," and Request No. 15 seeks documents that refer or relate to Dauska's retirement. (ECF 13-5, at 12.) GBP objected to Request No. 14 on the ground that it was overly broad and vague because it called "for any documents that 'refer or relate to' GBP." (*Id*.) This objection is baseless. It clearly requests a category of documents that relates to GBP's decision to terminate Dauska's position. There is no mystery as to what documents are sought, and contrary to GBP's objection, it does not seek any document related to GBP, but only a narrow category of documents related to the elimination of Dauska's position. GBP's objection to Request No. 15 is similarly defective because Dauska sufficiently sought a particular category of documents related to his retirement. Dauska also specifically limited the relevant time period for his requests to those documents dated from January 1, 2006, to the present, which serves to further narrow the scope of what documents he sought to discover. The requests are reasonably specific.

In addition to Request Nos. 14 and 15, Dauska's Request Nos. 7, 8, 21, and 24 are also sufficiently specific to meet the particularity requirement of Rule 34. Request Nos. 7 and 8 sought a specific category of documents maintained by specific employees that relate to specific key issues in the case, namely Dauska's retirement and the elimination of his position. They each meet the particularity requirement of Rule 34. Concerning Request Nos. 21 and 24, which seek information related to any investigation by GBP of Dauska's claims of discrimination and documents of witness statements, GBP contends that it has produced all relevant documents other than those that are protected by the work-product rule. Insofar as the documents are protected by the work-product rule, GBP need not produce them. However, Dauska asserts that he has not been provided with a privilege log by GBP so that he can ascertain whether GBP's objection has merit. If GBP has identified

21

documents that are otherwise discoverable but are protected by privilege, GBP is obligated to produce a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A).

There remains the question of costs and attorneys fees. Rule 37 allows the court to apportion the reasonable expenses when the motion is granted in part and denied in part. Fed. R. Civ. P. 37(a)(5)(C). Although Dauska's motion has not been granted in full, a substantial majority of the relief he requested has been granted. Moreover, several of GBP's arguments were either baseless or predicated on the kind of hypertechnical arguments that Rule 37 is intended to address:

> Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under subdivision (a).

Advisory Committee Notes to Fed. R. Civ. P. 37(a), 146 F.R.D. at 690. On the other hand, several of Dauska's Document Requests were overly broad. On balance, the court concludes that an apportionment of expenses attributable to the motion to compel is appropriate. GBP will therefore be ordered to pay one quarter of Dauska's reasonable expenses in bringing his motion to compel, not to exceed $2,000.

### CONCLUSION AND ORDER

Accordingly and for the reasons set forth above, GBP's motion for sanctions (ECF No. 9) is **DENIED**. Dauska's motion to compel (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**. GBP is ordered to answer Interrogatory Nos. 1 and 3, and supplement its responses to Request Nos. 7, 8, 14 through 21, and 24 within the next twenty days as set forth herein, after which Dauska is to be made available for deposition. GBP is further ordered to pay one quarter of Dauska's

22

expenses in bringing his motion to compel, not to exceed $2,000. Because of the delay caused by the dispute, the scheduling order is amended so that discovery is to be completed on or before October 10, 2013, and dispositive motions are due on or before November 10, 2013.

     **SO ORDERED** this   14th   day of May, 2013.

                       s/ William C. Griesbach
                       William C. Griesbach, Chief Judge
                       United States District Court